IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAR    2000

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

DAVID MIGDAL, et al.,                    :
    Plaintiffs                           :
                                         :
    v.                                   :     Civil No. AMD 98-2162
                                         :
ROWE PRICE-FLEMING                        :
INTERNATIONAL, INC., et al.,              :
    Defendants                           :

...o0o...

## MEMORANDUM

In a one-count, second amended complaint, the plaintiffs seek damages and other

relief against the investment advisers (and their affiliates) of two mutual funds pursuant to

§ 36(b) of the Investment Company Act of 1940, as amended, 15 U.S.C. § 80a-35(b).[1] I have

previously granted defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss, with leave to

amend. Now pending before the court is defendants' motion to dismiss the second amended

complaint, which plaintiffs have opposed. I have had the benefit of several supplemental

---

[1] Section 36(b) provides as follows in relevant part:

For the purposes of this subsection, the investment adviser of a registered investment
company shall be deemed to have a fiduciary duty with respect to the receipt of
compensation for services, or of payments of a material nature, paid by such registered
investment company, or by the security holders thereof, to such investment adviser or any
affiliated person of such investment adviser. An action may be brought under this
subsection by the Commission, or by a security holder of such registered investment
company on behalf of such company, against such investment adviser, or any affiliated
person of such investment adviser, or any other person enumerated in subsection (a) of
this section who has a fiduciary duty concerning such compensation or payments, for
breach of fiduciary duty in respect of such compensation or payments paid by such
registered investment company or by the security holders thereof to such investment
adviser or person.
15 U.S.C. § 80a-35(b).

submissions by the parties and no hearing is necessary. For the reasons set forth below, the motion will be granted.

(i)

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord Warth v. Seldin*, 422 U.S. 490, 501(1975); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Motions to dismiss for failure to state a claim are "granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits." 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, Civil 2d § 1349 at 192-93 (1990).

Rule 8(a)(2) requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A claimant is not required to "set out in detail the facts upon which he bases his claim" so long as the claim "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. Moreover, all well-pleaded factual allegations are assumed to be true and are viewed in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969). Only when the factual allegations in support of a claim are not well-pleaded (e.g., when they are "functionally illegible" or "baldly conclusory," *Shuster v. Oppelman*, 962 F.Supp. 394, 395 (S.D.N.Y.1997)), should they not

-2-

be accepted as true and the claim dismissed.

(ii)

This case is another skirmish in an on-going war, fought in state and federal fora

nationwide, in which a class of mutual fund investors seeks to exercise a measure of control

over the setting of fees paid by such funds (and charged to their investors) for investment

advisory services, and the resistance of the investment advisory industry to those efforts. *See*

*Migdal v. State*, --- Md. ---, 2000 WL 272304 (Md. March 14, 2000); *Krantz v. Prudential*

*Investments Fund Management LLC*, 77 F.Supp.2d 559 (D.N.J. 1999); *Strougo v. BEA*

*Associates*, 1999 WL 147737 (S.D.N.Y. March 18, 1999)(granting motion to dismiss with

leave to amend complaint), opinion *sur* amended complaint, 2000 WL 45714 (S.D.N.Y.

January 19, 2000)(concluding that amended complaint stated claim under § 36(b)).

Section 36(b), which imposes fiduciary duties upon investment advisers in respect to

the receipt of fees, *see* note 1 *supra*, creates a private cause of action by which investors

might seek judicial scrutiny of the fees paid by registered funds. Almost all the courts that

have considered the issue have agreed that the standard to apply in determining whether

compensation for managing a mutual fund violates the fiduciary duty imposed by section

36(b) is "whether the fee schedule represents a charge within the range of what would have

been negotiated at arm's-length in the light of all of the surrounding circumstances."

*Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 928 (2d Cir. 1982), *cert.*

*denied*, 461 U.S. 906 (1983). That is, to violate section 36(b), "the adviser-manager must

charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered." *Id.*[2]

A recurring difficulty for plaintiffs bringing claims under § 36(b) is to allege, even in the context of the forgiving standards of Fed.R.Civ.P. 12(b)(6), in a nonconclusory fashion, facts which comprise a cognizable claim under § 36(b).[3] One court has explicated this difficulty as follows:

> Section 36(b) and virtually all the cases decided thereunder in the Second Circuit are narrowly focused on disproportionate, excessive or unearned fees. *See e.g., Meyer v. Oppenheimer Management Corp.*, 895 F.2d 861, 866 (2d Cir.1990); *Krinsk*, 875 F.2d at 409; *Kalish v. Franklin Advisers, Inc.*, 742 F.Supp. 1222, 1227 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir.1991); *Levy v. Alliance Capital Management L.P.*, 1998 WL 744005, *2 (S.D.N.Y. October 26, 1998); *see also In re Nuveen*, 1996 WL 328006 at *14 ("Accordingly, every court addressing a § 36(b) claim has required the plaintiff to demonstrate that the compensation or payment received by the investment adviser was disproportionate to the services rendered."). Under the ICA, other claims of breach of fiduciary duty may be asserted under § 36(a), and such claims are also available under state law. Section 36(b), however, must be "narrowly read" *Levy*, 1998 WL 744005 at *3, and is limited to overreaching which result in excessive or inappropriate compensation. Cases which involve merely an incidental effect on compensation, or even a "failure to negotiate, are not properly within the scope of Section 36(b)." *Wexler v. Equitable Capital Management*, 1994 WL 48807 at *4 (S.D.N.Y. February 17, 1994) . . . .
>
> [In this case], the two allegations of "fee gouging" and "sweetheart contract," on which [plaintiff] bases [his claim of excessiveness], are made in an offhanded and conclusory fashion in the introduction to the complaint, before any substantive

---

[2]A minority of courts have also concluded that payments received under circumstances amounting to a conflict of interest may give rise to a private cause of action under § 36(b).*See Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 491 (N.D.Ill. 1999).

[3]*See, e.g., Verkouteren v. Blackrock Fin. Management, Inc.*, 37 F.Supp.2d 256, 261-62 (S.D.N.Y. 1999); *Levy v. Alliance Capital Management L.P.*, 1998 WL 744005, *2-*4 (S.D.N.Y. October 26, 1998), *aff'd*, 189 F.3d 461 (2nd Cir. 1999)(table); *Wexler v. Equitable Capital Management Corp.*, 1994 WL 48807, *4 (S.D.N.Y. February 17, 1994).

allegations are made . . . . [Plaintiff] has not alleged that the amount of compensation paid to [defendant] was unreasonably disproportionate or even inappropriate. Thus, given the absence of specific allegations of excessiveness, the § 36(b) claim will be dismissed.

*Strougo*, 1999 WL 147737, at*4-*5.

After the complaint was amended in *Strougo*, the court denied the defendant's motion to dismiss the § 36(b) claim, based largely on the court's reasoning that "it is impossible to say, as a matter of law, that *a net adviser fee equal to 42.3% of a fund's total investment income in a given year*, when such fund by any objective standard performed poorly in that year, is not disproportionately large enough to bear an unreasonable relationship to the services rendered by that adviser." *Strougo*, 2000 WL 45714, at *7 (emphasis added).

No such allegation has been made in the case at bar. Rather, plaintiff here has attempted to state a cognizable claim of excessiveness/disproportionality by purporting to allege both a "direct" violation and an "indirect" violation of § 36(b) on the basis of generalities which, if accepted, would make it possible to state a claim in virtually *any* case filed under § 36(b). As to the "direct" violation, plaintiffs allege, *inter alia*, the following regarding several periods ending in or before 1998: (1) the amount of fees charged by the underlying funds; (2) the underlying funds' benchmark performance standard; (3) the fact that two or three other (allegedly similar) funds charge fees amounting to only from ½ to ⅓ of those charged by the underlying funds, while outperforming the underlying funds; and (4) that defendants' earnings increased by more than 20%. I am constrained to reject these

allegations of "circumstantial" indicia of excessiveness as legally insufficient, however, because the level of generality remains too high and (more importantly) because these allegations do not remotely touch on the issue of what, if any, *relation* exists between the disputed fees on the one hand, and the services provided in consideration for their payment, on the other hand. *See Gartenberg*, 694 F.2d at 928.

As to the "indirect" violation, plaintiffs fare no better. I adhere to the view I adopted in granting the motion to dismiss the first amended complaint: an allegation that a non-employee, non-affiliate director, who is statutorily presumed to be disinterested,[4] is not rendered interested or non-independent by virtue of the number of interlocking boards on which she or he serves within a family of funds.[5] And, this is true notwithstanding the amount or-- as plaintiffs argue-- the "materiality" of the aggregate income such a director receives for such service, at least so long as the aggregate payment is not so large as to shock the conscience of a reasonable person. Nor do I credit as a factual allegation, as contrasted with permissible legal argument, the contention that the limits of human capacity for useful work and independent judgment is exceeded by service on more than 30 fund boards.

---

[4]"A natural person shall be presumed not to be a controlled person within the meaning of [the Act]." 15 U.S.C. § 80a-2(a)(9).

[5]*Cf. Verkouteren*, 37 F.Supp.2d at 258 ("Congress and the SEC are both undoubtedly aware that [interlocking boards] are rife in the industry, as they are also aware that the shareholders of mutual funds have the authority to set levels of director compensation and to remove directors from office. It is therefore apparent that Congress and the SEC have concluded that the best way to protect shareholders of the various funds (who have the power to elect or discharge directors and fix their compensation) is to make them aware of the relevant facts.")

Accordingly, proof that the disinterested directors had even a *significant* financial incentive to curry favor with the funds and their investment advisers would not *sustain a claim* under § 36(b); *a fortiori*, therefore, such allegations do not *state a claim* under § 36(b). *Cf. Verkouteren*, 37 F.Supp.2d at 260-61.

Investors in "captive" mutual funds may well deserve, as some clearly desire, greater protection than the current legal regime affords them against generous advisory and managerial fees. It may be that further legislative or regulatory study and action are overdue. Nevertheless, until Congress or appellate courts signal a relaxation of the pleading and proof thresholds for claims arising under § 36(b), what some investors might regard as an excessive concern for "nuisance suits" remains the order of the day.

(iii)

For the reasons set forth above, I will grant the motion to dismiss with prejudice. An order follows.

Filed: March 20, 2000

ANDRE M. DAVIS
United States District Judge